## A. J. TOLMAN *vs.* GUY CARLETON.

### Knox. Opinion December 20, 1912.

*Annexation.   Attachment.   Chattels.   Conversion.   Demand.   Landlord
and Tenant.   Officer's return.   Personal Property.   Possession.
Recording.   Removal of property attached.   Revised Statutes,
Chapter 83, Section 27.   Trover.   Vendor and Vendee.*

1. Lathes, a drill press, and a hand milling machine in a shop, bolted to
   the main shaft, and part of them bolted in the floor, are all attachable as
   personal property.
2. An attachment of a machine weighing 1200 pounds, of two others weigh-
   ing 800 pounds each, of another weighing 400 pounds, and of another
   weighing 100, all in a shop, belted to the main shaft, the three heavier
   ones not fastened to the floor, and the others bolted to the floor, held, to
   be well preserved by filing copy of return in the town clerk's office.

On report.   Action to stand for trial.

This is an action of trover to recover damages for the conversion
of personal property attached by the plaintiff, as sheriff, of the
County of Knox, on a writ, in the suit of *Gustaf A. Anderson* v.
*Eastern Coupling Company.*   Plea, the general issue.   At the con-
clusion of the evidence, the case was reported to the Law Court
with the stipulation that if the action is maintainable upon the
evidence, the action is to stand for trial; otherwise, a nonsuit is to
be entered.

*Reuel Robinson, and M. T. Crawford,* for plaintiff.
*Montgomery & Emery,* for defendant.

SITTING: WHITEHOUSE, C. J., SAVAGE, SPEAR, CORNISH, KING,
HALEY, JJ.

SAVAGE, J.   Trover for the conversion of personal property
attached by the plaintiff, as sheriff.   The case comes up on report,
with the stipulation that if the action is maintainable upon the evi-

dence, the action is to stand for trial; otherwise, a nonsuit is to be entered.

The evidence warrants a finding of the following facts. On a writ against the Eastern Coupling Company the plaintiff attached three lathes, a drill press, and a hand milling machine, all of which were then in the shop of the Eastern Coupling Company at Camden. Instead of removing these machines, or otherwise retaining physical possession of them, he filed within the town clerk's office, within five days, an attested copy of his return. He claimed the right to do so under R. S., Chap. 83, Sect. 27, which provides that "when any personal property is attached which by reason of its bulk or other special cause cannot be immediately removed, the officer may within five days thereafter, file in the office of the clerk of the town an attested copy of so much of his return on the writ as relates to the attachment,    .    .    .    and said attachment is as effectual · and valid, as if the property had remained in his possession and custody."

One of the machines weighed 1200 pounds, two others 800 pounds each, one 400 pounds, and one 100 pounds. They were all belted to the main shaft. The three heavier ones were not fastened to the floor. The other two were bolted to the floor to keep them "steady." There were two entrances to the shop, through one of which the machines could have been removed only with great difficulty, perhaps not at all. Through the other, they could have been removed, and were in fact removed later, the heaviest one being taken apart. The plaintiff did not know of the existence of the latter entrance.

The defendant was the manager of the Eastern Coupling Company. He was not present at the time the attachment was made. There is no evidence that he knew of the attachment, unless knowledge may be inferred from the circumstances. Afterwards, and before judgment in the action against the Coupling Company, the defendant caused the machines to be removed to his own shop in Rockport, and to be used there by his own employees. After judgment and issue of execution, the plaintiff demanded the machines of the defendant, and gave him a copy of the original return. The result of the demand is shown by the following excerpt from the plaintiff's own testimony: Q. "And as a result of that demand

did you get the machinery?" Ans. "I did not." Q. "Whether or not he would give it to you?" Ans. "He did not." This is all the evidence there is on that point. The demand was made at the defendant's "home" in Rockport. The machines were then in his "shop, back of his residence."

The defence is three fold, first, that the machines were a part of the realty, and not attachable as personal property; secondly, if the machines were personal property, that the plaintiff did not retain possession of them, and so lost the attachment; and lastly, that the evidence does not show any conversion by the defendant.

1. We think the first point clearly is not tenable. None of the cases cited by the defendant apply to the facts of this case. They are all cases of annexations made by the owner of the fee, and the controversies were between vendor and vendee, or attaching creditor and the owner of the fee attached, or on partition proceedings. It is well settled that an article may constitute a part of the realty, as between vendor and vendee, or owner of the realty and attaching creditor, mortgagor and mortgagee, which would not under similar conditions and circumstances be so treated as between landlord and tenant. *Parsons* v. *Copeland,* 38 Maine, 537; *Young* v. *Hatch,* 99 Maine, 465; *Young* v. *Chandler,* 102 Maine, 251. It was conceded at the argument of this case that the Eastern Coupling Company was not the owner of the building in which the machines were, but was merely a tenant. So the rule to be applied in this case is that of landlord and tenant. That rule was very clearly stated in the recent case of *Hayford* v. *Wentworth,* 97 Maine, 347. As between landlord and tenant, a chattel does not merge into the realty unless there is physical annexation, at least by juxtaposition, and an adaptability for use with the realty to which it is annexed, and an intention of the party annexing it to make it a permanent accession. And the burden is on him who claims a merger. There is a very strong presumption that a tenant, when he installs a removable machine in the shop which he has hired, does not intend to make it permanently a part of the real estate. And that presumption warrants a finding in this case that the machines attached were not a part of the realty, but were attachable as the personal property of the tenant.

2. It is true that an attachment of personal property is dissolved unless the attaching officer retains possession of the property attached. And in this case the plaintiff did not retain actual physical possession. But the statute quoted above permits the filing of a copy of the officer's return in the town clerk's office as a substitute for retention of possession, when the property attached cannot be immediately removed by reason of bulk or other special cause. *Perry* v. *Griefen,* 99 Maine, 420. The plaintiff here filed a copy of his return. The only point made is that there was no reason, for bulk or otherwise, why the machines could not have been immediately removed, and, therefore, that the officer was not justified in filing the copy as a substitute for possession.

The statute furnishes no standard. The nature of the property, its situation and expense of removal, are to be considered. The officer is left to use his judgment. His judgment is not conclusive. *Thompson* v. *Baker,* 74 Maine, 48. Still, his decision fairly exercised is entitled to some weight. Attachments have been upheld where copies of return were filed in case of hay in mow. *Wentworth* v. *Sawyer,* 76 Maine, 434; of logs, *Parker* v. *Williams,* 77 Maine, 418; *Stevens* v. *Thatcher,* 91 Maine, 70; of a wooden building, *Lewiston Steam Mill Co.* v. *Foss,* 81 Maine, 593; of bark, *Grant* v. *Albee,* 89 Maine, 299; of a temporary track and sleepers, *Fifield* v. *Maine Central R. R. Co.,* 62 Maine, 77; of charcoal and cordwood, *Reed* v. *Howard,* 2 Metcalf, 36; of pig iron, *Scovill* v. *Root,* 10 All., 414. In the latter case the court construing a statute like our own, said: "If the statute applies to such property as cordwood and charcoal piled up, millstones, logs, timber and wood, hewn stones and hay in a barn, the court cannot judicially see that it does not apply to fifty tons of pig iron stored in a foundry." And we are led to say that we cannot see why it does not apply to machines of the bulk and weight of those under consideration, and situated as they were. The statute does not mean that the property must be so bulky or so heavy that it cannot be moved at all. Hay can be moved by the pitchforkful, or by the load; wood and bark can be moved a little at a time; logs one at a time; pig iron a piece at a time. These machines could have been moved. The heaviest one might have been taken apart to facilitate removal, as was afterwards

done, when it was removed by the defendant. But we think that machines like these, and situated as those were, fairly come within the meaning of the statute.

3. The plaintiff contends that conversion by the defendant is shown by an invasion of the defendant's right, by such interference, use of, and dominion over the property, as against the plaintiff's right, as would itself be conversion. He also contends that there was a demand and refusal, which would be sufficient evidence of conversion to maintain the action on that ground.

We conclude that there was sufficient evidence to go to a jury on the question of conversion, but since the case must be tried again, it is inexpedient to discuss the effect of the evidence which is a question for the jury.

In accordance with the stipulation, the certificate will be,

*Action to stand for trial.*