BERTHA KLORMAN, PLAINTIFF, v. WESTCLIFF COMPANY, INCORPORATED, A CORPORATION OF NEW JERSEY, HENRIETTA SCHNEIDER AND JOHN J. SCHNEIDER, DEFENDANTS.

Decided February 3, 1934.

For the plaintiff, *George Rothstein.*

For the defendants, *Platoff, Saperstein & Platoff.*

ACKERSON, S. C. C. This action is upon a bond to recover a deficiency resulting from the foreclosure of the accompanying mortgage, and the matter now comes before me upon plaintiff's motion to strike out the separate answer of the defendant Westcliff Company, Incorporated, and the joint answer of the defendants Henrietta Schneider and John J. Schneider upon the grounds that said answers and the defenses contained therein and the objections in point of law raised thereby are sham or frivolous.

The decision of this motion hinges upon the sufficiency of the first separate defense contained in the answer of the corporate defendant, Westcliff Company, Incorporated, and upon the sufficiency of the first and second separate defenses contained in the joint answer of the defendants Henrietta Schneider and John J. Schneider.

The first defense in the answer of the corporate defendant and the second separate defense in the joint answer of the two individual defendants are identical, and allege that these defendants, who are obligors on the bond in suit, were not joined as parties in the proceedings to foreclose the accompanying mortgage pursuant to the requirements of chapter 231 of the laws of 1932 (*Pamph. L.* 1932, *p.* 509), which act became effective June 14th, 1932, and amended section 2 of

the so-called "Mortgage act" (*Pamph. L.* 1880, *p.* 184, amended by *Pamph. L.* 1881, *p.* 184), by inserting therein the following provision:

"That no action shall be instituted against any party answerable on the bond unless such party is joined in the proceedings to foreclose the said mortgage."

The bond which is here involved was executed by these defendants jointly on January 3d, 1929, prior, it will be noted, to the enactment of the above mentioned amendment, and it is not disputed that the mortgaged lands were conveyed by these defendants to a third party and that the present defendants were not made parties to the foreclosure proceedings. It follows, therefore, that if the above mentioned amendment is operative so far as the bond and mortgage here in question are concerned, these defendants may properly plead as a complete defense to the present action, that they were not made parties to the foreclosure proceedings.

The only reason urged by the present plaintiff against the validity of this defense is that the above mentioned amendment is unconstitutional in so far as bonds and mortgages executed prior to its enactment are concerned, *i. e.,* violative of article 4, section 7, paragraph 3 of the constitution of the State of New Jersey, which prohibits laws impairing the obligation of contracts or depriving a party of any remedy for enforcing a contract which existed when the contract was made.

Turning to the cases relied upon by the plaintiff in support of her contention, we find that in the case of *Baldwin* v. *Flagg,* 43 *N. J. L.* 495, the second section of the "Mortgage act" (*Pamph. L.* 1881, *p.* 184), was construed, and the court said that the act was violative of the aforesaid provisions of the constitution so far as prior bonds and mortgages were concerned, for the reasons that the act not only postponed the obligee's remedy on his bond until the foreclosure proceedings were terminated, but also impaired the value of the mortgage security by subjecting the purchaser's title to conditions of redemption after sale which must diminish the vendible value of the mortgaged premises.

In the case of *Morris* v. *Carter,* 46 *N. J. L.* 260, the court

merely held that the limitation in the second section of said act, that suits on bonds should be commenced within six months from the date of the sale of the mortgaged premises, is so connected with the other parts of the act (already declared unconstitutional in the case of *Baldwin* v. *Flagg, supra*), as to be inseparable, and, therefore, unconstitutional as to antecedent obligations. It is to be particularly noted that the court did not hold that such a limitation of time in which to bring an action on the bond, if not connected with the other parts of the act already declared unconstitutional so far as previously existing obligations are concerned, would have been in itself unconstitutional. It is doubtful if the court would have so found in view of the cases of *Barnaby* v. *Bradley*, 60 *N. J. L.* 158; 37 *Atl. Rep.* 764; *Warshung* v. *Hunt*, 47 *N. J. L.* 256; *affirmed*, 48 *Id.* 613; 9 *Atl. Rep.* 199, which held in effect that the legislature may pass statutes of limitation which shall apply to existing contracts, if a reasonable time within which to bring suit is allowed.

Nor is the recent case of *Vanderbilt* v. *Brunton Piano Co. et al.*, 111 *N. J. L.* 596; 169 *Atl. Rep.* 177, at all in point. There the court was called upon to pass upon the constitutionality of chapter 82 (*Pamph. L.* 1933), which permits the setting up in a suit on a bond the fair market value of the mortgaged premises, in reduction of a deficiency on the mortgage debt fixed by a foreclosure sale under chapter 157, *Pamph. L.* 1880, as amended by *Pamph. L.* 1881, *ch.* 147. In holding this legislation unconstitutional, so far as previously executed bonds and mortgages are concerned, the court said:

"It is apparent that when an obligee on a bond has, as an incident to his contract, the right to recover a liquidated sum, first by receiving the proceeds from the sale of the pledged property and supplementary by a personal action, and a statute is thereafter passed, the direct effect of which is to provide an opportunity to the debtor for reducing the sum recoverable, his contract is impaired."

In all three of the above cited cases the legislation referred to, impaired the obligation of contracts or deprived a party of a remedy which had previously existed, and did not involve

merely a matter of *procedure.* The court in the case of *Baldwin* v. *Flagg, supra,* laid down the following test by which the constitutionality of such legislation may be gauged:

"It is perfectly clear that any law which enlarges, abridges, or in any manner changes the intention of the parties, resulting from the stipulations in the contract, necessarily impairs it, and the manner or degree in which this change is effected can in no respect influence the conclusion. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, *imposing conditions not expressed in the contract,* or dispensing with the performance of those which are part of the contract, however, minute or apparently immaterial in their effect upon it, impairs its obligation."

Where, however, the legislation affects merely the procedure to be followed to secure a remedy under an existing right, it does not run counter to the above mentioned constitutional prohibition, and this is emphasized in the case of *Pennsylvania Company for Insurance, &c.,* v. *Marcus,* 89 *N. J. L.* 633; 99 *Atl. Rep.* 405. This case arose after the passage of the 1907 supplement (*Pamph. L.* 1907, *p.* 563) to the "Mortgage act" of 1880-1881, which supplement provides for the filing of a written notice before the commencement of a deficiency action on a bond. The case involved a bond executed prior to the adoption of the 1907 supplement. A notice was filed by the plaintiff but it did not comply with the act of 1907. In that case, as here, the plaintiff relied upon the decision in *Baldwin* v. *Flagg, supra,* in support of its contention that the statute of 1907 was unconstitutional in so far as it required the filing of such a notice in the case of a bond which had been executed prior to the passage of the legislation. The court stated that the purpose of the 1907 act "is manifestly to give notice to parties interested of the intention to enter a judgment, or of the bringing of an action, which if prosecuted to judgment, would open the foreclosure sale of which the purchaser at the foreclosure sale or the obligor, if the judgment was entered by confession, would have no other notice." After discussing the case of *Baldwin* v. *Flagg, supra,* the court distinguished the effect of the 1881

act and the 1907 act upon prior bonds, in the following language:

"Thus it appears that the act of 1881 is not one of procedure but one that related to the obligee's remedy. Before that act he was not bound to first foreclose his mortgage, and the legislation necessarily postponed the date when it could be enforced according to its terms. No such condition is created by the act of 1907.

\*     \*     \*     \*     \*     \*     \*

"We are of opinion that the required notice is a matter of procedure, imposing no new burdens or restrictions which materially impair the value and benefit of the bond, for it does not modify the nature or extent of the remedy any more than would a statute requiring suit to be commenced by serving a complaint containing a copy of the bond, instead of by summons without such a copy, or the filing of a *lis pendens* before commencing an action.

"The right to enter a judgment is not taken away or postponed, and the due day of the bond is not extended nor the value of any security given by the contract affected, as was the situation in Baldwin *v.* Flagg. The obligee has all the remedies he was entitled to when the bond was executed, and there is no new limitation or curtailment of his remedy; all the act of 1907 does is to introduce a new method of procedure requiring the filing of what is said in *Neu* v. *Rogge,* 88 *N. J. L.* 335, to be a *lis pendens.* Legislation which merely requires the filing of a preliminary notice of this character in a remedial proceeding for the enforcement of a contract existing when the statute was passed, does not impose a burden or restriction impairing the value or benefit of such a contract."

The purpose of the 1932 amendment which we are considering, is very similar to the purpose behind the 1907 act. The new act was passed for the purpose of giving obligors and those who have assumed payment of a mortgage debt, notice of a pending foreclosure. As Vice-Chancellor Backes so aptly states in *Vanderbilt* v. *S. W. Holding Co.,* 112 *N. J. Eq.* 584; 165 *Atl. Rep.* 634:

"He" (obligor) "is made a party defendant because of the

mandate of the 1932 act (*Pamph. L., p.* 509), to sound the tocsin that he may be held liable on his bond in a suit at law if deficiency ensues."

See, also, *Usbee Building, &c.,* v. *Ocean Pier Realty Corp.,* 112 *N. J. Eq.* 580; 165 *Atl. Rep.* 580, where the court in referring to mortgagors and obligors who had parted with their title said, "they are proper parties for discovery, but not for relief. They are also proper parties under the statute as noticees. *Pamph. L.* 1932, *p.* 509."

So it will be seen that the purpose of the 1932 act is to give the obligor notice that the mortgage which accompanies the bond is being foreclosed in order that he may have an opportunity to minimize the amount of any future deficiency by protecting his interest in the property and bidding at the foreclosure sale.

The reasoning of the court in *Pennsylvania Company for Insurance, &c.,* v. *Marcus, supra,* recently approved in the case of *South Broad Building and Loan Association* v. *Brunello,* 112 *N. J. L.* 79; 169 *Atl. Rep.* 870, respecting the constitutionality of the 1907 act, is equally applicable to the 1932 statute. Plaintiff has not been deprived of any remedy for enforcing her bond which existed when the contract was made. The statute does not impair the obligation of her contract and it merely relates to a method of procedure. Measured by the test laid down in *Baldwin* v. *Flagg, supra,* the 1932 act is not unconstitutional with respect to the bond in question and the criticised pleadings cannot, therefore, be stricken.

The objections in lieu of a motion to strike contained in both answers are framed under the 1932 act and must, therefore, stand or fall upon the constitutionality of that act with respect to the bond in question and cannot, therefore, be stricken out for the reasons hereinbefore given.

Turning now to the first separate defense set up in the joint answer of the defendants Henrietta Schneider and John J. Schneider we find that it raises the defense of usury. This seems to have been sufficiently pleaded in conformity with the requirements of *Grand Inv. Co.* v. *Gross,* 9 *N. J. Mis. R.* 981; 156 *Atl. Rep.* 280, and *Kase* v. *Bennett,* 54 *N. J. Eq.*

97, and, as defendants' affidavits seem to verify the facts as pleaded, the defense cannot be considered sham.

Plaintiff, however, alleges that the defense is frivolous and argues that the individual defendants were merely sureties for the Westcliff Company, Incorporated, the corporate defendant, and as the corporation cannot plead usury by reason of *Pamph. L.* 1920, *p.* 459 (4 *Comp. Stat., p.* 5706), these defendants as sureties cannot do so under the authority of *Freese* v. *Brownell,* 35 *N. J. L.* 285; *Commercial Funding Corp.* v. *Melroy Construction Co.,* 106 *N. J. Eq.* 11; 149 *Atl. Rep.* 586. The first difficulty which confronts this theory is that the complaint does not allege that the Schneiders were sureties on the bond in question, but on the contrary the allegation is that they and the corporate defendant "executed *their* bond on that date" to plaintiff's assignors. And, of course, the plaintiff cannot insist upon a different state of facts than set forth in her complaint. *Smith* v. *Hopping,* 88 *N. J. L.* 195; 95 *Atl. Rep.* 993.

Prior to the notice of motion herein, defendants craved oyer of the bond in question, and the copy which was furnished by the attorneys of the plaintiff in response thereto has been submitted to the court upon this motion, and, as it becomes a part of the record, it may be considered a part of the complaint for the purpose of this motion. *The Ordinary* v. *Executors of Smith,* 14 *N. J. L.* 479; *Earle* v. *Fidelity and Deposit Co. et al.,* 68 *Atl. Rep.* (*N. J.*) 1078. Inspection shows that the bond is executed by the corporation and the two individuals as the principal obligors, and nowhere does it appear that the relation of principal and surety existed as between the corporation and the individuals. Under such circumstances it would seem that the rule pronounced by the foregoing statute and cases should not be applied to these individual defendants, at least on a motion such as this. Furthermore, it is settled in this state that one who has contracted as a principal, but who is in fact or later becomes a surety, cannot in a court of law claim any of the privileges belonging to the later character. *Palmer* v. *White,* 65 *N. J. L.* 69; 46 *Atl. Rep.* 706; *Pintard* v. *Davis,* 21 *N. J. L.* 632; *Anthony* v. *Fritts,* 45 *Id.* 1; *Shute* v. *Taylor* (*Court of*

*Errors and Appeals*), 61 *Id.* 256; 39 *All. Rep.* 663; *Hunt* v. *Gorenberg,* 9 *N. J. Mis. R.* 463, 467; 155 *All. Rep.* 881. *Per contra* it would seem that the holder of a bond cannot assert that the relation of principal and surety exists as between co-obligors who signed as principals.

It is apparent from what has already been said that the answers in question cannot be stricken as either sham or frivolous and an order may be presented in accordance with the conclusions thus reached.