178 N.J. Super. 177 (1981)
428 A.2d 544
RIVER EDGE SAVINGS & LOAN ASSOC., A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
CLUBHOUSE ASSOCIATES, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT, AND HOLIDAY LAKE, INC., A NEW JERSEY CORPORATION, AND HENRY E. WULSTER, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Submitted March 9, 1981.
Decided March 30, 1981.
*178 Before Judges BISCHOFF, MILMED and FRANCIS.
Leonard H. Marks, attorney for appellant.
Goodman & Lustgarten, attorneys for respondent (Richard A. Lustgarten on the brief).
*179 No brief was filed on behalf of defendants Holiday Lake and Henry E. Wulster.
PER CURIAM.
This is an appeal from a deficiency judgment following a mortgage foreclosure. The issue presented is whether this action was barred by N.J.S.A. 2A:50-22(a), which prohibits any action to enforce an agreement to assume the payment of any mortgage, or of any bond secured by a mortgage, unless the mortgage was first foreclosed and the person making such agreement was made a party defendant in the foreclosure.
In June 1974 Holiday Lake, Inc. (Holiday) and its principal, Henry E. Wulster, gave a bond and mortgage to plaintiff covering two condominium units which were part of a larger development. In September 1976 a bank not involved in the instant matter began an action to foreclose a mortgage on other condominium units and related properties owned by Holiday. Plaintiff filed a separate foreclosure action in December 1976 and defaults were entered against all defendants named in that action in May 1977. Thereafter, however, plaintiff was prevented from proceeding with its action by orders entered in the unrelated foreclosure action and in bankruptcy proceedings filed by Holiday.
On April 10, 1978 defendant Clubhouse, which had not been a party to any of the preceding litigation, agreed to buy substantially all of the assets of Holiday. As part of the purchase price defendant agreed to assume the mortgage held by the plaintiff and to hold Holiday harmless from any deficiency thereon. The transaction was conditioned upon obtaining approvals of the sale and financing provisions from the courts in which the bankruptcy proceeding and the foreclosure action not brought by plaintiff were then pending. After those approvals had been given plaintiff moved to vacate the stays which had been entered against its own foreclosure action. Although defendant was not a party to any of the litigation, it received notice of plaintiff's motions.
*180 While plaintiff's motions were pending, plaintiff agreed with Holiday, among other things, that if Holiday included specific language in its deed to defendant to assure that defendant would be liable for the amount of any deficiency after plaintiff completed its foreclosure action, then plaintiff would not seek any judgment for such deficiency against Holiday or Wulster. On November 22, 1978 the receivers for Holiday signed a deed conveying substantially all of Holiday's assets to defendants which contained the language requested by plaintiff.
About two months before the deed was executed the orders staying plaintiff's foreclosure action were vacated. Defendant received copies of the orders vacating the stays. A final judgment foreclosing all equity of redemption in the mortgage held by plaintiff was entered on November 27, 1978. On the following day, November 28, 1978, the deed conveying Holiday's assets to defendant was recorded. The condominium units covered by plaintiff's mortgage were sold to plaintiff at a sheriff's sale for $100 each. Plaintiff filed this deficiency action, asserting a right to enforce the bond and mortgage against defendant, and also asserting that it was a third-party beneficiary of the assumption agreement between defendant and Holiday.
At the end of plaintiff's case defendant moved to dismiss the complaint, based on N.J.S.A. 2A:50-22(a). The trial judge denied the motion on the ground that the statute was designed to insure that defendants in deficiency actions had been given notice of the preceding foreclosure. He reasoned that since defendant in this case had been given notice of the foreclosure action, and knew that plaintiff intended to rely on defendant's assumption agreement, well before the foreclosure sale, the purpose of the statute had been substantially satisfied. Defendant challenges that ruling by this appeal.
The trial judge also determined the amount of the credit defendant was entitled to for the fair market value of the premises at the time of the sheriff's sale, and the amount of the resulting deficiency to which plaintiff was entitled. Those amounts are not contested on this appeal.
*181 When this action was filed N.J.S.A. 2A:50-22 provided in part:
No action to enforce an agreement, express or implied, to assume the payment of any mortgage or of any bond secured by a mortgage, shall be maintained against a person making such agreement unless the mortgage shall have been first foreclosed, or extinguished by the foreclosure of a prior mortgage or a lien, provided no such action may be maintained unless:
(a) the person making such agreement was made a party defendant in the foreclosure action,
....
There are no reported decisions applying this statute. But a related statute, N.J.S.A. 2A:50-2, provides that substantially the same restrictions shall apply to deficiency actions generally. Guidance may therefore be obtained from the legislative and judicial history of the latter statute.
The central requirement of both statutes, that a separate foreclosure action must precede a deficiency judgment, was first adopted as part of the Mortgage Act of 1880, as amended in 1881. Montclair Savings Bank v. Sylvester, 122 N.J. Eq. 518, 521 (E. & A. 1937); Pennsylvania Co. for Ins. etc., v. Marcus, 89 N.J.L. 633, 635-636 (E. & A. 1916). In 1932 the Legislature added the requirement that no deficiency action may be instituted "against any party answerable on the bond unless such party is joined in the proceedings to foreclose the mortgage." L. 1932, c. 231. In Lapp v. Belvedere, 116 N.J.L. 563, 569 (E. & A. 1936), the court commented on the purpose of this joinder requirement:
... The evident legislative purpose was to afford to the person liable upon the bond, through notice of the proceedings instituted to foreclose the collateral mortgage, timely opportunity to invoke measures for self-protection, particularly in relation to the sale of the security, upon which deficiency liability depends. Manifestly, it was a measure deemed necessary in view of the almost complete paralysis of the real estate market consequent upon the current trade depression. It was essentially procedural in character. It did not impair the substantial means of enforcement in existence when the contract was made.
See, also, Klorman v. Westcliff Co., Inc., 12 N.J. Misc. 266, 271, 170 A. 251 (Sup.Ct. 1934); Vanderbilt v. S.W. Holding Co., 112 N.J. Eq. 584, 585 (Ch. 1933).
*182 This rationale for the joinder requirement was expanded upon in Montclair Savings Bank v. Sylvester, supra. There the court noted that the amount remaining due must be fixed in a foreclosure action, and that such a determination is res judicata as to the obligor on the bond, provided he was joined in the foreclosure:
... Under the old practice, where the mortgagor was a proper but not a necessary party to the foreclosure suit, even though a deficiency action was in contemplation, the foreclosure decree did not, as regards the quantum of the mortgage debt, have this conclusive character... But now, by the amendment of section 2 of the act of 1880, supra, ... no action on the underlying obligation lies against one not made a party to the foreclosure proceedings and the decree is still res judicata in respect of the quantum of the mortgage debt.... [122 N.J. Eq. at 522-523; citations omitted]
Since the decision in Montclair the 1947 Constitution has been adopted unifying our law and equity courts, and reflecting this State's commitment to the single controversy doctrine. Leisure Technology v. Klingbeil, 137 N.J. Super. 353, 357 (App. Div. 1975). This doctrine requires that all claims between parties be presented in a single proceeding in order to avoid the prolongation and fractionalization of litigation. Tevis v. Tevis, 79 N.J. 422, 434 (1979); Falcone v. Middlesex Cty. Medical Soc., 47 N.J. 92, 93-94 (1966). Clearly, the required joinder in a foreclosure action of a party to be charged in a deficiency suit fosters this policy. Conversely, the omission of such a party would tend to frustrate the policy by permitting an obligor to raise issues in a deficiency proceeding which would otherwise have been determined in the foreclosure action.
In Ledden v. Ehnes, 22 N.J. 501 (1956), a mortgagor was never properly served in a foreclosure action. Although the mortgagor had actual knowledge of the foreclosure sale, he had no knowledge of the deficiency judgment entered against him until a levy was made 18 years later. The court held that while the mortgagor was barred by equitable doctrines from attacking the foreclosure judgment, the same disability did not apply to his attack on the deficiency judgment because the latter had always been invalid:

*183 ... The statute [N.J.S.A. 2A:50-2] is positive in its terms and no amount of interpretation can read in anything other than a clear expression of a procedural mandate. Since Ledden had not "been made a party in the proceeding [action] to foreclose the mortgage" the statute says "no action shall be instituted." The action leading to the deficiency judgment was improper at the time it was taken and is now out of time. [22 N.J. at 509]
We think that the conclusion in Ledden is equally applicable in the instant case. N.J.S.A. 2A:50-22 is no less emphatic than N.J.S.A. 2A:50-2. The former provides that no action for a deficiency "shall be maintained" unless the person who assumed the mortgage was made a party defendant in the foreclosure action. Although there was no gap of years between the foreclosure and deficiency actions in this case, as there was in Ledden, we think that difference is insignificant because in both cases the deficiency judgments obtained were invalid by statutory mandate.
Despite the rather plain language that N.J.S.A. 2A:50-2 applied to "all proceedings to collect the [mortgage] debt," that section was persistently held inapplicable to actions against parties who assumed such a debt. Teitz v. Meano, 107 N.J. Eq. 210 (E. & A. 1930); Green v. Stone, 54 N.J. Eq. 387, 390-391 (E. & A. 1896); McFarland v. Withers, 122 N.J. Eq. 167, 170 (Ch. 1937). N.J.S.A. 2A:50-22 was adopted by L. 1947, c. 381 to eliminate this distinction. The sponsor's explanation was simply that "[f]undamentally the same debt is involved, and the same limitation should apply to the same types of suit." Assembly Bill 132, Sponsor's Statement.
Plaintiff argues that N.J.S.A. 2A:50-22 is not applicable to the present action. This argument seems to be based on the trial judge's observation that defendant could not have been joined in the foreclosure action because its title to the premises had not been recorded until after the foreclosure judgment had been entered. When the General Assembly passed the bill which became N.J.S.A. 2A:50-22 it required the joinder in the foreclosure action of "the obligor upon the agreement" of assumption. Assembly Bill 132 (1947). The Senate added the *184 words "of record" after the word "obligor." Amendments to Assembly Bill 132 (1947). The statute appeared in that form for a number of years. However, when Title 2 of the Revised Statutes was replaced by Title 2A the words "of record" were omitted. We infer from this history that the Legislature abandoned any intent to only require the joinder of parties with a recorded interest in the premises. It is clear that even a party who has no title interest in the subject property is a proper party in a foreclosure action, and a necessary party if there is any intention to pursue a deficiency judgment against that party. Pilgrim B. & L. Ass'n v. McGuinness, 117 N.J. Eq. 438, 439-440 (E. & A. 1935).
In the present case plaintiff knew of defendant's interest in the property and, in fact, relied on defendant's assumption of the mortgage, yet plaintiff took no action to join defendant in the foreclosure action. It is true that defendant could have acted more vigorously to protect its interest. But N.J.S.A. 2A:50-22 clearly casts the burden of joinder on the party seeking the deficiency judgment. We see no reason to relieve plaintiff of that burden.
Plaintiff argues that to permit defendant to benefit from N.J.S.A. 2A:50-22 would be a "fraud" committed on the courts which approved defendant's purchase of Holiday's assets with the understanding that defendant would assume the mortgage held by plaintiff. We find this argument to be without merit because plaintiff is unable to point to any misrepresentation made by defendant. Defendant's representations that it would purchase the property subject to plaintiff's mortgage and would assume the mortgage were performed. Plaintiff was not entitled to assume that statutory defenses to such an action, such as a statute of limitations or N.J.S.A. 2A:50-22, would not be asserted.
We have also considered plaintiff's arguments that it was entitled to enforce defendant's assumption of the mortgage debt as a third-party beneficiary of the agreement between defendant *185 and Holiday or, alternatively, that the assumption agreement and plaintiff's reliance on it constituted a novation of the debt. We do not doubt that plaintiff was a third-party beneficiary of defendant's agreement with Holiday. Herbert v. Corby, 124 N.J.L. 249 (Sup.Ct. 1940), aff'd o.b. 125 N.J.L. 502 (E. & A. 1940); N.J.S.A. 2A:15-2. But at least since the adoption of N.J.S.A. 2A:50-22 the right to enforce an assumption agreement as a third-party beneficiary has been the right to seek a deficiency after foreclosure and compliance with that statute. Cunningham and Tischler, "Transfer of the Real Estate Mortgagor's Interest," 27 Rutg.L.Rev. 24, 44-45 (1974). The statute would clearly be of no effect with regard to a grantee who assumed a mortgage if the assumption agreement could be enforced without regard to the foreclosure and other statutory requirements. The same reasoning also disposes of plaintiff's argument that there was a novation of the debt.
The judgment is reversed and the matter is remanded for the entry of a judgment dismissing the complaint.